IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE NOVAK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. |
| COOK COUNTY SHERIFF THOMAS DART, | ) |
| THE COOK COUNTY SHERIFF'S OFFICE, | ) |
| UNKNOWN SHERIFF'S DEPUTIES, THE | ) |
| VILLAGE OF WESTMONT, WESTMONT | ) |
| POLICE DEPARTMENT and UNKNOWN | ) |
| WESTMONT POLICE OFFICERS, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Christine Novak, through her attorneys, brings the following complaint against Defendants Cook County Sheriff Thomas Dart, the Cook County Sheriff's Office, Unknown Sheriff's Deputies, the Village of Westmont, the Westmont Police Department, and Unknown Westmont Police Officers for: (1) violating her constitutional rights; (2) violating her rights under the Americans with Disabilities Act ("ADA"); (3) failing to intervene; (4) intentional infliction of emotional distress; and (5) malicious prosecution.

### JURISDICTION & VENUE

1. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§1331 and 1367.

2. Venue is proper under 28 U.S.C. §1391(b). All parties reside in this judicial district, and the events giving rise to the claims occurred within this district.

### PARTIES

3. Plaintiff Christine Novak is a fifty-three year old resident of Chicago, Illinois and at the time of the incident was a resident of Chicago, Illinois. She meets the definition of a

"qualified individual with a disability" as defined in 42 U.S.C. § 12131(2) and is entitled to protection by Title II of the ADA.

4. Defendant Cook County Sheriff Thomas Dart is responsible for the Cook County Sheriff's Department, including the deputies who execute arrest warrants within Cook County, Illinois. Sheriff Dart was the employer and principal for the as-yet unknown Sheriff's Deputies. The Cook County Sheriff's Office meets the definition of a "public entity" as defined in 42 U.S.C. § 12131(1) and is subject to and covered by Title II of the ADA.

5. Defendant Unknown Sheriff's Deputies employed by Sheriff Thomas Dart (referred to collectively as "Sheriff's Deputies") were sworn members of the Cook County Sheriff's Department, employed by Sheriff Thomas Dart and acting under color of law and within the scope of their employment as representatives of a public entity, as defined in 42 U.S.C.§ 12131(1).

6. Defendant Village of Westmont is a municipal corporation, duly incorporated under the laws of the State of Illinois. The Village of Westmont is an employer and principal of Defendants Unknown Westmont Police Officers. Defendant Village of Westmont meets the definition of a public entity as defined in 42 U.S.C.§ 12131(1) and is subject to and covered by Title II of the ADA.

7. The Westmont Police Department is an employer and principal of Defendants Unknown Westmont Police Officers. Defendant Westmont Police Department meets the definition of a public entity as defined in 42 U.S.C.§ 12131(1) and is subject to and covered by Title II of the ADA.

8. Defendant Unknown Westmont Police Officers were sworn members of the Westmont Police Department, employed by Defendant Village of Westmont and/or the Westmont Police Department, and were acting under color of law and within the scope of their employment as representatives of a public entity, as defined in 42 U.S.C.§ 12131(1).

# FACTS

1. Christine Novak is a person with numerous disabilities. Ms. Novak lives with sciatica, a medical condition caused by compression or irritation of the spinal nerve roots. Ms. Novak's sciatica is so severe that she requires the use of a wheelchair for mobility and is often confined to her bed.

2. Ms. Novak has bipolar affective disorder and severe anxiety/panic disorder. Ms. Novak also lives with agoraphobia, which causes her to be very fearful of going outside.

3. Ms. Novak has recently been diagnosed with cancer.

4. Under the ADA, Ms. Novak is a person with a physical or mental impairment that substantially limits major life activities including walking, breathing, the major bodily function of normal cell growth (for her cancer), thinking, concentration, the major bodily function of the brain, and the major bodily function of the musculoskeletal system.

5. As a result of her various physical and mental disabilities, Ms. Novak almost never leaves her second floor apartment, which is not equipped with an elevator. When it is absolutely necessary, she manages to crawl up or down the stairs. Almost all of her medical appointments are conducted at her apartment.

6. When Ms. Novak needs to attend appointments outside her apartment, she requires the use of a vehicle specially equipped to accommodate individuals who use wheelchairs and intravenous medication.

7. Because of her numerous disabilities, Ms. Novak is sometimes assisted by her friend and neighbor, Mark Carpell.

8. On or about March 9, 2014, at or around 10:30 pm, three Sheriff's Deputies arrived at Ms. Novak's apartment in Chicago with a warrant for her arrest based on a three-year old charge of alleged telephonic harassment. As discussed in detail below, the charge was baseless and ultimately dismissed.

9. At the time the Sheriff's Deputies arrived at Ms. Novak's house, Mr. Carpell was present and assisting Ms. Novak with her intravenous medications, which included a cancer medication, a sedative for her anxiety, and hydration fluid.

10. The Sheriff's Deputies explained to Ms. Novak and Mr. Carpell that they had a warrant for her arrest, and would need to take her to a police station in Westmont, Illinois. Mr. Carpell and Ms. Novak explained to the Sheriff's Deputies that Ms. Novak requires the use of a wheelchair, is on oxygen (through a tank that cannot be transported), cannot walk or stand without assistance, and also has bipolar disorder, panic attacks, and agoraphobia. Mr. Carpell also explained to the Sheriff's Deputies that Ms. Novak was currently receiving medication intravenously, and that he would need to disconnect the intravenous lines from Ms. Novak's body before she could be transported.

11. The Sheriff's Deputies contacted someone by telephone and explained to them that Ms. Novak requires the use of a wheelchair, has bipolar disorder, panic attacks, and agoraphobia, and that her neighbor would need to disconnect numerous intravenous tubes from her before she could be transported. The Sheriff's Deputies urged that Ms. Novak not be arrested at this time, and that alternate arrangements be made for her to be arraigned. Nevertheless, the Sheriff's Deputies ultimately informed Ms. Novak that, notwithstanding her physical and mental disabilities, as well as the fact that she was receiving oxygen and intravenous medication, they had been ordered to arrest her and bring her to the Westmont police station. Ms. Novak became visibly upset and panicky. Eventually, Mr. Carpell was able to calm her down.

12. At the order of the Sheriff's Deputies, Mr. Carpell interrupted Ms. Novak's receipt of intravenous medication and disconnected the intravenous lines from her body. He also interrupted Ms. Novak's receipt of oxygen from the tank.

13. Ms. Novak then crawled down the stairs of her apartment building on her belly to reach their vehicle.

14. Mr. Carpell asked that the Sheriff's Deputies bring Ms. Novak's wheelchair with them to the Westmont police station. The Sheriff's Deputies refused. The Sheriff's Deputies told Mr. Carpell the Westmont police had a wheelchair for Ms. Novak to use.

15. Concerned for Ms. Novak's well-being, Mr. Carpell insisted that he accompany Ms. Novak to the Westmont police station. Mr. Carpell told the Sheriff's Deputies that he did not have a car, and asked if they would be giving him and Ms. Novak a ride back to Ms. Novak's apartment after she had been arraigned at the police station. The Sheriff's Deputies told Mr. Carpell that the Westmont police department would arrange a ride home for them.

16. Upon arrival at the Westmont police station, the Sheriff's Deputies walked into the station and then came back out accompanied by one of the Defendant Westmont Police Officers. The officer informed Ms. Novak and Mr. Carpell that the police station's wheelchairs were locked up and they did not have the key. Instead, the officer gave Ms. Novak a short stool with wheels on the bottom. The stool had no backrest or armrests and was difficult to control. Mr. Carpell had no choice but to hold Ms. Novak up while she sat on the stool and then gently push her into the police station.

17. Inside the police station, the Sheriff's Deputies explained to the Defendant Westmont Police Officers that Ms. Novak requires the use of a wheelchair and has numerous other physical and mental disabilities. The Sheriff's Deputies then left the police station, and Ms. Novak's arrest was processed.

18. Around this time, both Ms. Novak and Mr. Carpell saw that there were multiple chairs inside the Westmont police station that had both backrests and armrests. No one was using these chairs. Mr. Carpell asked if Ms. Novak could use one of those chairs. The

Defendant Westmont Police Officers refused to let Ms. Novak use any of these chairs, stating that the chairs were not for use by the public.

19. After being processed, Ms. Novak was informed that she would have to put up $500 in bond money in order for her to be released, and that she could not pay the bond via credit. Because Ms. Novak did not have enough money with her to pay her bond, Mr. Carpell offered to walk over to an ATM and get the money she needed.

20. Ms. Novak was placed in a room in the Westmont police station near the front office. Before leaving for the ATM, Mr. Carpell reiterated Ms. Novak's disabilities to the Westmont Police Officers -- the same officers to whom the Sheriff's Deputies had previously explained Ms. Novak's physical and mental disabilities. He further explained that Ms. Novak would be unable to sit on the wheeled stool by herself because it did not have a backrest, and that one of the officers would have to stay with her at all times, as she could fall and injure herself. The Westmont Police Officers assured Mr. Carpell that one of them would stay with Ms. Novak while he went to the ATM. Based on this assurance (and the fact that he had explained to the officers the nature and extent of Ms. Novak's disabilities), Mr. Carpell left the police station to withdraw money from a nearby ATM.

21. Despite the Defendant Westmont Police Officers assurances to Mr. Carpell, neither of them stayed with Ms. Novak while Mr. Carpell went to the ATM. Shortly after Mr. Carpell left the police station, the Defendant Westmont Police Officers left the room Ms. Novak was in.

22. Ms. Novak was still sitting on the short, backless and armless stool with wheels. Sitting in the room unattended, Ms. Novak was unable to maintain her balance on the stool and fell off onto her head, suffering injuries to her head and body. She screamed for help. The room Ms. Novak was in was within earshot of the Defendant Westmont Police Officers, as Ms. Novak

6

could hear the officers talking and laughing. However, none of the Defendant Westmont Police Officers responded to her cries for help.

23. When Mr. Carpell returned to the police station with the bond money, he could hear her screaming. He immediately demanded to see her. When he entered the room Ms. Novak was in, he saw her lying on the ground, bleeding from an apparent head injury. He yelled for a medical kit so he could try to stop the bleeding. One of the Defendant Westmont Police Officers replied that the medical kit was locked up and he did not have the key. Mr. Carpell screamed for some paper towels, anything to stop the bleeding. One of the Defendant Westmont Police Officers finally brought him a wad of paper towels. Eventually, Mr. Carpell managed to stop the bleeding. By this time, Ms. Novak was experiencing a full panic attack.

24. After paying Ms. Novak's $500 bond with the money from the ATM, Mr. Carpell asked the Defendant Westmont Police Officers to take Ms. Novak and him home. They told him (contrary to the assurance given him by the Sheriff's Deputies) that he and Ms. Novak would have to find their own way home. One of the officers did agree to call a taxi cab for them, but told them that they would have to pay for the cab themselves.

25. The Defendant Westmont Police Officers then told Ms. Novak and Mr. Carpell that they could not wait for the cab in the police station—they would have to wait outside. Mr. Carpell protested, telling the officers that it was freezing outside, that Ms. Novak did not have a winter coat with her (neither did Mr. Carpell), reminding the Defendant Westmont Police Officers that Ms. Novak lives with severe disabilties, and pointing out that the cab could take a long time to arrive. The Defendant Westmont Police Officers insisted that Ms. Novak and Mr. Carpell would have to wait outside. It took approximately 20 minutes before the taxi cab arrived.

26. After finally getting back to Ms. Novak's apartment in Chicago, Mr. Carpell contacted Ms. Novak's medical doctor, who came out to see her later that morning. Ms. Novak needed seven sutures on her head and had several bruises on her body.

27. Subsequently, the prosecutor in charge of the telephonic harassment case against Ms. Novak declined to prosecute the case. Although the Westmont police department claimed that it had audio-tapes showing Ms. Novak harassed the complainant, the audio-tapes were never produced and the complainant declined to appear in court. An officer in the Westmont police department had previously told Ms. Novak and Mr. Carpell that the harassment charge against Ms. Novak was without basis and that the charge should be thrown in "the circular file."

28. Ms. Novak still experiences panic attacks and severe emotional distress as a result of the events described above.

## COUNT I
**42 U.S.C. § 1983 Fourth Amendment – Unreasonable Seizure (against all Defendants)**

29. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

30. As described in the preceding paragraphs, Defendants Cook County Sheriff Thomas Dart, Unknown Cook County Sheriff's Deputies, the Cook County Sheriff's Office, the Village of Westmont, the Westmont Police Department, and Unknown Westmont Police Officers unreasonably seized (or caused to be seized) Ms. Novak in violation of the Fourth Amendment of the United States Constitution.

31. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Ms. Novak's constitutional rights.

32. As a result of Defendants' misconduct, Ms. Novak suffered injuries, including a cut on her head that required seven sutures, bruises on her body, and emotional distress.

## COUNT II
**42 U.S.C. § 1983 Fourth Amendment – Failure to Intervene (against the Village of Westmont, the Westmont Police Department, and Unknown Westmont Police Officers)**

33. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

34. As described more fully in the preceding paragraphs, during the constitutional violations described herein, one or more of the Defendant Unknown Westmont Police Officers stood by without intervening to prevent the misconduct described in this Complaint.

35. As a result of Defendant Unknown Westmont Police Officers' failure to intervene, Ms. Novak suffered pain and injury, including seven sutures on her head, bruises on her body, emotional anguish, humiliation, fear, and anxiety.

36. Illinois law provides that public entities, such as Defendant Village of Westmont and Defendant Westmont Police Department, must pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

37. At all relevant times, Defendant Westmont Police Officers were agents of Defendant Village of Westmont and/or Defendant Westmont Police Department, and acting within the scope of their employment as Westmont Police Officers. Defendants Village of Westmont and/or Westmont Police Department, therefore, are liable as principal for all torts committed by Defendant Unknown Westmont Police Officers.

## COUNT III
**Discrimination on the Basis of a Disability in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. (against the Village of Westmont, Westmont Police Department, and Unknown Westmont Police Officers)**

38. Each of the foregoing Paragraphs is incorporated as if restated fully herein

39. Defendants Westmont Police Department, Unknown Westmont Police Officers, and Village of Westmont violated the ADA by failing to provide reasonable modifications for Ms. Novak despite being aware of her physical and mental disabilities.

40. Defendants Westmont Police Department, Unknown Westmont Police Officers, and Village of Westmont subjected Ms. Novak to discrimination solely on the basis of her

physical and mental disabilities, in violation of her rights under the ADA. Specifically, and without limitation, Defendants Westmont Police Department, Unknown Westmont Police Officers, and Village of Westmont:

(a) failed to provide Ms. Novak with a wheelchair that had armrests and backrest even though such wheelchairs were at the Westmont police station;

(b) refused to let Ms. Novak sit in a chair at the Westmont police station that had armrests and a backrest even though such chairs were readily available and defendant Westmont Police Officers were aware of Ms. Novak's disabilities;

(c) failed to monitor and observe Ms. Novak while Mr. Carpell went to obtain the bond money even though they were aware of Ms. Novak's disabilities and had been warned Ms. Novak could be injured if she were left unattended;

(d) refused to assist Ms. Novak despite her cries for help after she had fallen and injured herself, even though the Defendant Westmont Police Officers could hear and see her distress and knew Ms. Novak's disabilities prevented her from helping herself;

(e) forced Ms. Novak to wait outside in winter weather without a coat for 20 minutes or more, even though the Defendant Westmont Police Officers knew Ms. Novak has serious disabilities, and had suffered physical injuries as a result of their own misconduct.

41. As a proximate result of Defendants Westmont Police Department, Unknown Westmont Police Officers, and Village of Westmont's violations of Ms. Novak's rights under the ADA, Ms. Novak suffered physical injuries as well as discrimination, unequal treatment, violations of her rights under the laws of the United States, loss of dignity, humiliation, emotional pain and suffering, anxiety, trauma, and embarrassment.

### COUNT IV
**Illinois Law - Intentional infliction of Emotional Distress (against the Village of Westmont, Westmont Police Department, and Unknown Westmont Police Officers)**

42. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

43. As described in the preceding paragraphs, the misconduct of Defendant Unknown Westmont Police Officers toward Ms. Novak was extreme and outrageous.

44. Given the nature of their misconduct, and their personal knowledge of Ms. Novak's physical and mental disabilities, Defendant Unknown Westmont Police Officers

committed the misconduct with knowledge that their actions were likely to cause severe emotional distress to Ms. Novak.

45. As a direct and proximate result of Defendant Unknown Westmont Police Officers' misconduct, Ms. Novak has suffered severe emotional distress, including emotional anguish, humiliation, fear, and anxiety.

46. Illinois law provides that public entities, such as Defendants Village of Westmont and Westmont Police Department, must pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

47. At all relevant times, Defendant Unknown Westmont Police Officers were agents of Defendant Village of Westmont and/or Defendant Westmont Police Department, and acting within the scope of their employment as Westmont Police Officers. Defendant Village of Westmont and/or Westmont Police Department, therefore, are liable as principal for all torts committed by Defendant Westmont Police Officers.

**COUNT V**
**Illinois Law - Malicious Prosecution (against the Village of Westmont, Westmont Police Department, and Unknown Westmont Police Officers)**

48. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

49. Defendants Village of Westmont, Westmont Police Department, and Unknown Westmont Police Officers caused criminal proceedings against Ms. Novak to be commenced and/or continued without probable cause for the crime charged.

50. Defendants Village of Westmont, Westmont Police Department, and Unknown Westmont Police Officers acted with malice and with willful and wanton disregard for the truth.

51. The charge against Ms. Novak was dismissed in a manner indicative of her innocence, which fully and finally terminated the case in Ms. Novak's favor.

52. As a result of Defendants Village of Westmont, Westmont Police Department, and Unknown Westmont Police Officers misconduct, Plaintiff suffered injuries including emotional distress.

53. Illinois law provides that public entities, such as Defendant Village of Westmont and the Westmont Police Department, must pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

54. At all relevant times, Defendant Unknown Westmont Police Officers were agents of Defendants Village of Westmont and/or Westmont Police Department, and acting within the scope of their employment as Westmont Police Officers. Defendants Village of Westmont and/or Westmont Police Department, therefore, are liable as principal for all torts committed by Defendant Unknown Westmont Police Officers.

WHEREFORE, Plaintiff Christine Novak respectfully requests that this Court enter judgment against Defendants, awarding compensatory damages for the injuries that she has suffered, costs and reasonable attorneys' fees, punitive damages against each of the Defendants, and all such other relief as this Court finds just and reasonable.

PLAINTIFF DEMANDS TRIAL BY JURY.

RESPECTFULLY SUBMITTED,

__/s/_Jin-Ho Chung_____

Barry C. Taylor
Laura J. Miller
Jin-Ho Chung
Amanda Antholt
Equip for Equality
20 North Michigan Avenue, Suite 300
Chicago, IL 60602
Telephone: (312) 341-0022
Facsimile: (312) 541-7544
BarryT@equipforequality.org
Laura@equipforequality.org
Jinho@equipforequality.org
Amanda@equipforequality.org

Counsel for plaintiff